# UNITED SECURITY LIFE INSURANCE AND TRUST COMPANY OF PENNSYLVANIA

*v.*

## BOND.

LIFE INSURANCE; CONTRACTS; FORFEITURE.

1. Where in consideration of a sum in gross paid to him by an insurance company the party insured agrees to pay to the company certain specified monthly payments for twenty years, or for life only, if life should terminate within that period, and secures the making of such payments by a bond in double the amount of the sum so paid, which bond is secured by deed of trust upon his real estate, but no provision is made for the repayment under any circumstances of the sum advanced, the contract is not one of loan but is one of insurance to be governed by the same rules of construction as are applied in the case of ordinary contracts of insurance.

2. Where the party so insured defaults in his payments and is notified by the company that the insurance on his life, is forfeited, but that he will be reinstated in his contract if within a specified time he will pay the monthly instalments in arrear and furnish a satisfactory certificate of health, and such instalments are not paid within the time limited and no such certificate is furnished, but the insured subsequently pays and the company accepts the overdue instalments, such acceptance

constitutes a waiver of the forfeiture of the contract of insurance, and upon the death of the insured, his beneficiary is entitled to a surrender of the bond and release of the deed of trust.

No. 982.   Submitted May 11, 1900.   Decided June 6, 1900.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia sitting as an equity court, vacating and annulling a bond, a deed of trust securing the same, and a deed executed in pursuance of a sale under the deed of trust.   *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Nathaniel Wilson* and *Mr. Clarence R. Wilson* for the appellant.

*Mr. A. B. Duvall* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decree rendered by the Supreme Court of the District of Columbia, whereby a bond given by one John H. Bond, husband of the appellee, Hattie A. Bond, a deed of trust to secure the same, executed by John H. Bond and the appellee, and a deed of conveyance, subsequently executed in pursuance of a sale had under said deed of trust, were vacated and annulled.

The appellant, the United Security Life Insurance and Trust Company of Pennsylvania, is an insurance company incorporated under the laws of the State of Pennsylvania, having its principal office in the city of Philadelphia, but doing a large business and having an agent in this District. Its scheme of life insurance is of a peculiar character, differing from the ordinary schemes in some important particulars, the principal of which is that, instead of making payment of a stipulated sum of money at the end of life or of a definite period of years, in consideration of punctual payment by the assured of certain specified periodical premiums, and compliance with certain requirements, a sum of

money in gross is paid to the assured in the first instance, and in consideration of this payment, the assured covenants to pay a stipulated sum in each and every month for a term of years, in the present case for a term of twenty years, or until his death, if his death should occur during the said term ; and he covenants further to comply with certain requirements not substantially different from those comprised in the ordinary policies of insurance.  To secure these monthly payments, the assured executes and delivers to the company a bond in the penal sum of double the amount paid to him conditioned for the faithful performance of the agreement between the parties; and for the security of the bond, he executes and delivers to the company a deed of trust upon real estate.  The agreement between the parties, which both the bond and deed of trust are intended to secure, is the equivalent or counterpart of the policy of insurance in other cases—although the same is more like that of an annuity with the conditions reserved; and it is the charter by which their relations are governed.  It is based, like that of annuities and of ordinary policies of insurance, upon the risks of the average duration of human life.

The agreement in the present case was entered into on May 8, 1893, and provided that, in consideration of the sum of $2,200 then paid by the company to the assured, he (the assured) would pay or cause to be paid to the company, at its office in Philadelphia, for a term of twenty years from said date if he should live so long, otherwise only so long as he should live and no longer, monthly payments of $21.10, on the 11th day of each and every month for twenty years thereafter, beginning on March 11, 1893.  The contract recited that John H. Bond, the assured party, had executed his bond in due form in the penal sum of $4,400, and with his wife, the appellee, Hattie A. Bond, had executed a deed of trust to certain named trustees, to secure the prompt payment of said specified monthly sums and the performance

of the covenants of the contract. These covenants are not important in the present case further than as they refer to the prompt payment of the stipulated monthly sums. The contract further provided that upon full and faithful performance by the assured, of all the covenants on his part to be performed, the company would, at the end of twenty years, or upon the receipt of satisfactory proof of his death before that time, surrender the bond and cause the deed of trust to be released.

There is a provision in the contract that if at any time within the twenty years the assured was desirous to terminate the contract, he might do so, and the company would surrender the bond and cause the deed of trust to be released upon the payment by the assured of all costs and expenses in accordance with the surrender value of the contract, computed according to the tables in use in the office of the company, which should be open at all reasonable times to the inspection of the assured. And it may be added that the deed of trust provides for the sale of the property conveyed by it upon any default by the assured, and the payment from the proceeds of sale of "the principal debt," whether then due or not.

The assured, John H. Bond, died on June 24, 1896, three years and three months after entering into this agreement, when forty of the monthly payments had become due and payable, and he had paid only thirty-four of them, being the instalments due up to December 11, 1895. Six instalments had become due and remained unpaid, amounting to $126.60; and he had paid in all the sum of $717.40. It seems that he had frequently been dilatory in his payments, and that only on two or three occasions had he been prompt in paying on or before the specified day. On March 11, 1895, when he was in default for the instalments due in January and February immediately preceding, he was notified in writing by the secretary and treasurer of the company that for such default the insurance on his life was

forfeited, but that he would be "reinstated in his contract," if on or before the 20th day of that month he would pay the overdue instalments and the instalment which fell due on the day of the date of the letter, and would furnish to the company a satisfactory certificate of health. No certificate of health was ever furnished in pursuance of this notice, nor were any of the instalments overdue paid by the day specified. But that for January was paid and accepted on April 30, 1895; that for February on May 30, 1895; and that for March on July 12, 1895. And so the payments continued, and the assured became more dilatory from month to month, and never paid up in full. The instalment due on December 11, 1895, was the last that was paid, and this was not until June 9, 1896, two weeks before Bond's death.

On June 29, 1896, after Bond's death, Thomas G. Hensey, who claimed to act for the appellee, Hattie A. Bond, the widow of the deceased, and who held a second mortgage on the property covered by the deed of trust which has been mentioned, tendered to the company the sum of $128.78, the whole amount of the instalments due and payable at the time of Bond's death; but the company refused to accept the money, and proceeded to have the deed of trust executed by a sale, at which it became the purchaser of the property for the sum of $2,300. This was on or about April 26, 1897. On July 30, 1897, the appellee, Hattie A. Bond, the widow of the deceased, John H. Bond, and who was the devisee under his will, instituted these proceedings by filing a bill in equity in the Supreme Court of the District to procure the cancelation and annullment of the bond and deed of trust which have been mentioned, and of the conveyance of the property made to the company by the trustees under the deed of trust, and to have the company restrained from disturbing her in the property, which she had been notified to vacate.

Answers were filed and testimony taken. A part of the

latter deemed of great importance on behalf of the appel-
lant was a table of surrender values of the agreements or
policies of insurance of the company such as was referred
to in the contract between the parties, and wherein it was
stated at the head of the table that the agreement or policy
had "no cash value for three years." But there was also
given in evidence a statement, under date of June 15, 1896,
which was some days before the death of Bond, which state-
ment was testified to have come from the office of the com-
pany in Philadelphia, wherein the surrender value of the
special agreement here in controversy was stated to be
$101.68, and consequently the amount payable to the com-
pany in settlement was the sum of $2,096.32, as of the date
of January 11, 1896, with interest from that date. Three
letters were also given in evidence, addressed to Bond from
the office of the company in Philadelphia,—one under date
of March 11, 1895, which has already been mentioned; a
second, under date of May 10, 1895, notifying him that
unless his arrears were paid before the last day of that
month the matter would be placed in the hands of the
counsel of the company for collection; and a third, under
date of August 10, 1895, in which he was notified that
unless the four instalments then due were paid on or before
the 20th day of that month, the company would place the
matter in the hands of its attorney with instructions to
advertise and sell the property.

The court below decreed in favor of the complainant,
and the company has appealed from the decree.

As we have stated, the scheme of life insurance developed
in the present case is peculiar, and we believe a somewhat
novel one. It seems to combine with the ordinary plan of
insurance something of the principle of annuities, as well as
some features of the scheme on which building and loan
associations, so called, have been established. The princi-
pal characteristic feature that distinguishes it from the
ordinary plan of life insurance is, that the sum in gross

payable by the insurance company is paid at the beginning instead of the end of the risk. The agreement, therefore, between the parties would seem to involve some of the elements of a loan, and accordingly to necessitate a proportionately larger premium to be paid by the assured person, which would include, not only an adequate consideration for the risk of the duration of life, but also some equivalent for interest on the money advanced. And yet the contract is not one of loan; for there is no agreement, express or implied, that the amount advanced by the insurance company to the person insured shall ever be repaid by the latter with or without interest. The contract is that, in consideration of the sum of money paid to him in gross by the company, the assured person shall make to the company a certain specified monthly payment in each and every month for twenty years, or for life only, if life should terminate before the end of that period; and the security taken for the faithful performance of the contract by the assured is not as a guarantee for the repayment of the gross sum advanced in the first instance, but as a guarantee merely for the monthly payments and for the due safeguarding of the life on which their continuance depends. It is very true that in what is called the surrender value of the agreement, corresponding in some respects to what is known as a " paid-up policy " in cases of ordinary life insurance, reference is had to the original sum advanced as the basis on which a settlement and surrender are allowed; but this is only because in that way is most easily ascertained the value of the portion of the contract yet unperformed by the assured. It is not so much a rescission of the contract as an adjustment and determination of it and of its value to the company at the time of the surrender. The company, it will be noted, has fully and completely performed its part of the contract by the payment of the gross sum in the beginning; and it is only the value of the assured person's continued performance of it thereafter that

can enter into the matter of its cancelation. The scheme, therefore, is purely and simply one of life insurance, although somewhat different from the ordinary life insurance; and the duty imposed upon the assured person, apart from the provisions usual in all such cases, that he should not unduly expose his life to danger, which are not in question here, was merely to pay the premiums upon the policy, or what amounts to the same thing, the monthly payments specified in the agreement, punctually and faithfully at the times required by the contract. It is the same duty precisely that is required by the ordinary contract of insurance; and, therefore, we see no reason why it should not be governed by the same rules of law that have been applied by courts of equity for the regulation and construction of the ordinary contract of insurance.

Now, the claim here on behalf of the appellant is, that the insured, John H. Bond, forfeited his insurance by his failure to pay his monthly instalments promptly. But it is a conceded fact that there was an acceptance of these overdue instalments by the company, and a continued acceptance of such instalments almost to the day of Bond's death. In ordinary cases, this course of conduct on the part of the company would undoubtedly be construed in equity as a waiver of forfeiture. And this doctrine is not sought to be controverted by the appellant. On the contrary, it is conceded to be the general law. The contention is, that it is not applicable to the present case, for the reason that after March 11, 1895, Bond's life was never insured by the company, inasmuch as by the letter to him of that date, the secretary and treasurer of the company notified him that the insurance on his life was forfeited, and that the conditions prescribed in the letter for his reinstatement in the contract, namely, the payment of the overdue instalments by a certain day, accompanied by a satisfactory certificate of health, had never been complied with by Bond.

But this argument seems to be based upon what appears

to us to be the mistaken assumption that there have been two concurrent contracts entered into between Bond and the company, one of loan and the other of insurance, and that after March 11, 1895, the latter was at an end, and only the former remained in force. For the argument necessarily concedes, and must concede, the existence of some contractual relation between the parties after the day mentioned. We are clearly of opinion that there was only one contract in existence between them at any time, and that simply a contract of insurance. As we have stated, the agreement between them nowhere provides for the repayment by Bond of the sum advanced to him, but only for the payment of certain monthly instalments during his life, with the limitation that they should not extend beyond twenty years if his life should extend beyond that period. This was simply a contract of insurance and nothing more; and this was the only contract that could be enforced under the bond or by a sale had under the deed of trust. And if the contract of insurance was the only one in existence, it is very clear that its forfeiture was waived by the acceptance of the belated payments. And it is equally clear that the requirement of a satisfactory certificate of health was likewise waived by the acceptance of the payments without it. For if the condition in the letter of March 11, 1895, that a certificate of health should be presented as well as full payment made of the overdue instalments, were insisted on, it would have been bad faith on the part of the company to accept his payments without reference to the other part of the condition. As a matter of fact, it is quite clear that the whole condition was itself waived; for no payment was made by March 20, the day specified, and none until April 30, 1895, when the instalment due on January 11 was paid and accepted without protest. On no other ground but that of waiver of forfeiture, and waiver even of the conditions prescribed in the letter of March 11, 1895, can we explain the treasurer's subsequent letter of May 27, 1895, to Bond, in

which he writes: "Unless your arrears are paid in full on or before the last day of this month, we will place the matter in the hands of our counsel for collection." Nor can we otherwise explain the still later communication from the treasurer, of August 10, 1895, in which he writes: "Unless the said instalments (four instalments then in arrears) are paid on or before the 20th inst., we will place the matter in the hands of our counsel, with instructions to advertise and sell the property without delay." The instalments of April, May, June and July were then overdue; and yet no payment was made until August 21, and then only the instalment for April was paid. Bond appears to have been greatly delinquent at all times; and the company would have been justified at any time in adopting extreme measures to enforce the contract, but it did not think proper to do so. It was disposed to be lenient towards him. Having been lenient towards him during his lifetime, and having adopted a course of action towards him by which he was induced to believe that a forfeiture was not insisted on, it should not in equity insist upon such forfeiture after his. death, for delinquency condoned during his lifetime. We think the authorities are all against that proposition of forfeiture; and they need not be cited.

It is suggested, and much insisted on in argument—and there is testimony in the record to support it—that Bond's purpose in making his later payments was not to keep up his insurance, which he himself is claimed to have regarded as forfeited, but to get the benefit of the surrender value of the agreement, it being claimed that it had no surrender value under three years. But it is not apparent to us that this argument has any force in the determination of the controversy. It goes back, like the other branch of the argument, to the assumption, for which we find no basis whatever in the contract between the parties, that there was some other contractual relation between them than the contract of insurance. The surrender value of the agreement

was the surrender value of a policy of insurance; and to have any surrender value, the policy or contract of insurance must be in existence.

There are some other questions of minor importance raised on behalf of the appellant; but only one seems to be much insisted on. This is that Hensey, who made the tender of the overdue payments after Bond's death, was acting for himself and in the interest of the second mortgage held by him and not as the agent of the appellee. The testimony, although not very convincing, seems to us to be sufficient to show that he was acting under an arrangement with the appellee whereby he was entitled in law to be regarded as her agent. But whether he was or was not her agent in the transaction, we see no reason for holding that in the present case he was not entitled in that way to protect his second mortgage. But the consideration of this point is unimportant if, as we hold, the default of John H. Bond during his lifetime was condoned by the company. After his death, the company was entitled to have the amount then in arrear, and it can be of no consequence to it from what source the money for the purpose is derived.

From what we have said, it follows in our opinion that the decree appealed from should be *affirmed, with costs. And it is so ordered.*